

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-1 WALID JAMIL a/k/a
    "WALLY,"
D-2 JALAL JAMIL a/k/a
    "JOHNNY,"
D-3 CAROL IBRAHIM a/k/a
    "CAROL KASSAB,"
D-4 DELAINE JACKSON,
D-5 IBRAHIM SAMMOUR,
D-6 MARY SMELTER-BOLTON,
and
D-7 CASS HAWKINS,

      Defendants.

Case: 2:23-cr-20062
Judge: Roberts, Victoria A.
MJ: Grand, David R.
Filed: 02-01-2023 At 03:21 PM
INDI SEALED MATTER (SS)

VIO: 18 U.S.C. § 1349
     18 U.S.C. § 1347
     18 U.S.C. § 371
     42 U.S.C. § 1320a-
     7b(b)(1)-(2)
     18 U.S.C. § 2

## INDICTMENT

THE GRAND JURY CHARGES:

## General Allegations

At all times relevant to this Indictment:

### The Medicare Program

1.     The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or over or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.     Medicare covered different types of benefits and was separated into different program "parts."  Medicare "Part A" covered certain eligible home health care costs for medical services provided by a home health agency ("HHA") to beneficiaries who required home health services because of an illness or disability that caused them to be "homebound."  Medicare "Part B" covered the cost of physicians' services, medical equipment and supplies, diagnostic laboratory services, and home health services.

4.     National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan starting in or around May 2015. AdvanceMed (now known as "CoventBridge") was the Zone Program Integrity

2

Contractor ("ZPIC"), meaning the Medicare contractor charged with investigating fraud, waste, and abuse.

5.     Wisconsin Physicians Service ("WPS") administered Medicare Part B for claims arising in the state of Michigan.  CMS contracted with WPS to receive, adjudicate, process, and pay claims.

6.     Payments under Medicare were often made directly to a provider of goods or services, rather than to a Medicare beneficiary.  This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

7.     Physicians, clinics, and HHAs, among other medical and service providers, were collectively referred to as "providers."   When enrolling in Medicare, providers agreed to abide by Medicare's policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all of the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

8.      Upon enrollment, the provider, whether a clinic, a HHA, or an individual, was assigned a provider identification number for Medicare billing purposes (referred to as a "National Provider Identifier" or "NPI").   When the provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that provider.

9.      In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, beneficiary, and services rendered.

10.     Providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.  Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form.  These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the provider.

11.     Providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered. Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their

4

patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted. Medicare required complete and accurate patient medical records so that Medicare could verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider.

12.     Medicare only covered home health services, if, on the claimed dates of service:

a.     the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

b.     the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) Intermittent skilled nursing care; (ii) Physical therapy; (iii) Speech-language pathology services; or (iv) Continued occupational therapy;

c.     the HHA must have been approved by Medicare (Medicare-certified); and

d.     the Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

## The Home Health Agencies

The following home health agencies are referred throughout this Indictment together as the "Jamil HHAs:"

13.    Premier Home and Health (PHNH) Care, Inc. ("Premier") was a Michigan corporation doing business within the Eastern District of Michigan. Premier was enrolled as a participating provider with Medicare and submitted claims to Medicare.

14.    Great Lake Home Care, LLC ("Great Lake") was a Michigan company doing business within the Eastern District of Michigan. Great Lake was enrolled as a participating provider with Medicare and submitted claims to Medicare.

15.    Divined Home Health Care, Inc. ("Divined") was a Michigan corporation doing business within the Eastern District of Michigan. Divined was enrolled as a participating provider with Medicare and submitted claims to Medicare.

16.    Reflex Home Care, LLC ("Reflex") was a Michigan company doing business within the Eastern District of Michigan. Reflex was enrolled as a participating provider with Medicare and submitted claims to Medicare.

17.    Community First Homecare, LLC ("Community First") was a Michigan company doing business within the Eastern District of Michigan.

Community First was enrolled as a participating provider with Medicare and submitted claims to Medicare.

18.     Trillium Home Care Solutions, LLC ("Trillium") was a Michigan company doing business within the Eastern District of Michigan. Trillium was enrolled as a participating provider with Medicare and submitted claims to Medicare.

19.     Legend Home Care, Inc. ("Legend") was a Michigan corporation doing business within the Eastern District of Michigan. Legend was enrolled as a participating provider with Medicare and submitted claims to Medicare.

### The Defendants and Other Individuals

20.     Defendant WALID JAMIL, a resident of Oakland County, Michigan, controlled, owned, and operated, in whole or in part, the Jamil HHAs from at least in or around January 2016 through on or about the date of the Indictment.

21.     Defendant JALAL JAMIL, a resident of Oakland County, Michigan, controlled, owned, and operated Premier, from at least December 2016 through on or about the date of the Indictment.

22.     Defendant CAROL IBRAHIM was a resident of Oakland County, Michigan.

23.     Defendant DELAINE JACKSON was a resident of Wayne County, Michigan.

24. Defendant IBRAHIM SAMMOUR was a resident of Wayne County, Michigan.

25. Defendant MARY SMELTER-BOLTON was a resident of Oakland County, Michigan.

26. Defendant CASS HAWKINS was a resident of Wayne County, Michigan.

27. Company Owner 1, a resident of Oakland County, Michigan, was the owner of Company 1.

28. Company 1, located in the Eastern District of Michigan, was a visiting physician clinic.

**COUNT 1**
**18 U.S.C. § 1349**
**(Health Care Fraud Conspiracy)**
**D-1 WALID JAMIL**
**D-2 JALAL JAMIL**
**D-3 CAROL IBRAHIM**
**D-4 DELAINE JACKSON**
**D-5 IBRAHIM SAMMOUR**

29. Paragraphs 1 through 28 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

30. Beginning at least in or around January 2016 through on or about the date of the Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, and elsewhere, the defendants WALID JAMIL,

JALAL JAMIL, CAROL IBRAHIM, DELAINE JACKSON, and IBRAHIM SAMMOUR did willfully and knowingly, combine, conspire, confederate, and agree with each other, and others, known and unknown to the Grand Jury, to execute a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347.

## Purpose of the Conspiracy

31.     It was a purpose of the conspiracy for WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM, DELAINE JACKSON, IBRAHIM SAMMOUR, and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on illegal kickbacks and bribes; (b) submitting or causing the submission false and fraudulent claims to Medicare for services that were (i) medically unnecessary, (ii) ineligible for Medicare reimbursement, and (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and

(d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators, and to further the fraud.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

32.    Beginning in or around the dates set forth below, WALID JAMIL and JALAL JAMIL exercised ownership and control over the Jamil HHAs by and through straw owners.

33.    In or around the dates set forth below, WALID JAMIL and JALAL JAMIL caused the submission of false certifications to Medicare that the described HHAs would comply with all Medicare rules and regulations, and federal laws, including that each HHA would refrain from violating the Federal Anti-Kickback Statute:

|     | HHA             | Date                             |
| --- | --------------- | -------------------------------- |
| a.  | Premier         | May 17, 2017                     |
| b.  | Great Lake      | April 29, 2016                   |
| c.  | Divined         | August 30, 2016                  |
| d.  | Reflex          | August 29, 2016                  |
| e.  | Community First | February 14, 2016                |
| f.  | Trillium        | June 30, 2016<br>October 25, 2019 |

34.    WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM, DELAINE JACKSON, and others submitted and caused the submission of false and

fraudulent enrollment materials to Medicare that failed to disclose WALID JAMIL and JALAL JAMIL's ownership interest and control of the Jamil HHAs.

35.     WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM, DELAINE JACKSON, their co-conspirators, and others concealed and disguised the ownership interest and control over the Jamil HHAs of WALID JAMIL and JALAL JAMIL by, among other things, making material misrepresentations and omissions in corporate filings with the State of Michigan, enrollment applications and claims submitted to Medicare, and other documents.

36.     WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM, DELAINE JACKSON, their co-conspirators, and others, paid and caused the payment of illegal kickbacks and bribes to purported patient recruiters in the form of checks, cash, and electronic cash transfers, in exchange for referring Medicare beneficiaries to the Jamil HHAs and providing Medicare beneficiary information that was later used to support false and fraudulent claims to Medicare for purported home health care on behalf of the Jamil HHAs.

37.     WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM, and others devised and participated in an illegal kickback and bribery scheme with Company Owner 1, in which the Jamil HHAs sent Medicare beneficiaries to Company 1 to be certified for home health care by medical providers employed by Company 1 and referred back to the Jamil HHAs.  At the direction of WALID JAMIL, JALAL

11

JAMIL, CAROL IBRAHIM, and others, the Jamil HHAs subsequently billed Medicare for services it claimed were provided to Medicare beneficiaries that were obtained through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented.

38.     WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM, DELAINE JACKSON, IBRAHIM SAMMOUR, and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of medical records, including but not limited to, home health certifications and plans of care, nursing visit notes, evaluations, re-certifications, and discharges of Medicare beneficiaries, by and through each of the Jamil HHAs, to support claims to Medicare for home health care services that were obtained through illegal kickbacks and bribes, medically unnecessary, and that were never provided.

39.     WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM, DELAINE JACKSON, their co-conspirators, and others submitted and caused the submission through interstate wires of false and fraudulent claims to Medicare for home health care services purportedly provided by the Jamil HHAs, in an amount exceeding $50 million.  The Jamil HHA's were paid approximately $43 million by Medicare.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-7
### 18 U.S.C. §§ 1347 & 2
### (Health Care Fraud)
### D-1 WALID JAMIL
### D-2 JALAL JAMIL
### D-3 CAROL IBRAHIM
### D-4 DELAINE JACKSON

40.    Paragraphs 1 through 28 of the General Allegations section of this

Indictment are re-alleged and incorporated by reference as though fully set forth

herein.

41.    On or about the dates enumerated below, in the Eastern District of

Michigan, and elsewhere, WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM,

and DELAINE JACKSON, in connection with the delivery of, and payment for,

health care benefits, items, and services, did knowingly and willfully execute, and

attempt to execute, a scheme and artifice to defraud Medicare, a federal health care

benefit program affecting commerce, as defined in Title 18, United States Code,

Section 24(b), and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, any money and property owned by, and under the

custody or control of, said health care benefit program, in connection with the

delivery of, and payment for, health care benefits, items, and services, by

submitting and causing the submission of false and fraudulent claims to Medicare.

13

## Purpose of the Scheme and Artifice

42.     It was the purpose of the scheme and artifice for WALID JAMIL,

JALAL JAMIL, CAROL IBRAHIM, and DELAINE JACKSON to unlawfully

enrich themselves and their accomplices by, among other things: (a) submitting or

causing the submission of false and fraudulent claims to Medicare for claims based

on kickbacks and bribes; (b) submitting or causing the submission of false and

fraudulent claims to Medicare for services that were (i) medically unnecessary, (ii)

ineligible for Medicare reimbursement, and (iii) not provided as represented; (c)

concealing the submission of false and fraudulent claims to Medicare and the

receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of

the fraud for the personal use and benefit of the defendants and their accomplices,

and to further the fraud.

## The Scheme and Artifice

43.     Paragraphs 32 through 39 of this Indictment are re-alleged and

incorporated by reference as though fully set forth herein as a description of the

scheme and artifice.

## Acts in Execution of the Scheme and Artifice

44.     On or about the dates specified below, in  the Eastern District of

Michigan, and elsewhere, WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM,

and DELAINE JACKSON, in connection with the delivery of and payment for

health care benefits, items, and services, and aided and abetted by, and aiding and

abetting others known and unknown to the Grand Jury, did knowingly and

willfully execute, and attempt to execute, the above-described scheme and artifice

to defraud a health care benefit program affecting commerce, as defined in Title

18, United States Code, Section 24(b), and to obtain, by means of materially false

and fraudulent pretenses, representations, and promises, money and property

owned by, and under the custody and control of said health care benefit program:

| Count Defendant(s) | Medicare Beneficiary | Home Health Agency | Claims Submission Date | Amount Billed to Medicare |
|---|---|---|---|---|
| 2<br>D-1 W. JAMIL<br>D-4 JACKSON | MM | Great Lake | July 1, 2020 | $1,001.01 |
| 3<br>D-1 W. JAMIL | DK | Community | November 16, 2019 | $4,250.01 |
| 4<br>D-1 W. JAMIL<br>D-4 JACKSON | WY | Divined | September 11, 2018 | $2,500.01 |
| 5<br>D-1 W. JAMIL<br>D-3 IBRAHIM | IS | Trillium | August 31, 2020 | $3,050.01 |
| 6<br>D-1 W. JAMIL<br>D-3 IBRAHIM | CS | Reflex | September 29, 2020 | $2,200.01 |

| Count Defendant(s) | Medicare Beneficiary | Home Health Agency | Claims Submission Date | Amount Billed to Medicare |
|---|---|---|---|---|
| 7 D2- J. JAMIL | RN | Premier | July 23, 2019 | $3,500.01 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

**COUNT 8**
**18 U.S.C. § 371**
**(Conspiracy to Defraud the United States**
**and to Pay and Receive Health Care Kickbacks)**
**D-1 WALID JAMIL**
**D-3 CAROL IBRAHIM**
**D-4 DELAINE JACKSON**
**D-6 MARY SMELTER-BOLTON**
**D-7 CASS HAWKINS**

45.     Paragraphs 1 through 28 of the General Allegations section and paragraphs 32 through 39 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

46.     Beginning in or around January 2016, and continuing through the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, and elsewhere, defendants WALID JAMIL, CAROL IBRAHIM, DELAINE JACKSON, MARY SMELTER-BOLTON, and CASS HAWKINS did willfully, that is with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, their co-conspirators,

and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a. to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare, in violation of Title 18, United States Code, Section 371;

b. to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person: (i) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and (ii) to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole or in part under a Federal health care program, that is, Medicare, in violation Title 42, United States Code, Section 1320a-7b(b)(2)(A) and (B); and,

c. to solicit or receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind: (i) in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and

in part under a Federal health care program, that is, Medicare; and (ii) in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and (B).

### Purpose of the Conspiracy

47.     It was the purpose of the conspiracy for WALID JAMIL, CAROL IBRAHIM, DELAINE JACKSON, MARY SMELTER-BOLTON, CASS HAWKINS, and their co-conspirators to unlawfully enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes in exchange for referring Medicare Beneficiaries to the Jamil HHAs to serve as patients; (2) submitting and causing the submission of claims to Medicare for home health services that the Jamil HHAs purported to provide to these recruited beneficiaries; and (3) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators, and to further the fraud.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

48.    WALID JAMIL, CAROL IBRAHIM, DELAINE JACKSON, their

co-conspirators, and others, at the direction of WALID JAMIL, paid and caused

payment of kickbacks and bribes to patient recruiters, including MARY

SMELTER-BOLTON and CASS HAWKINS, in exchange for Medicare

beneficiary referrals to the Jamil HHAs.

49.    WALID JAMIL, CAROL IBRAHIM, DELAINE JACKSON, their

co-conspirators, and others, at the direction of WALID JAMIL, submitted and

caused the submission of false and fraudulent claims to Medicare through the Jamil

HHAs, for home health services that were purportedly provided to Medicare

beneficiaries referred by patient recruiters, including MARY SMELTER-

BOLTON and CASS HAWKINS.

50.    Medicare paid the Jamil HHAs approximately $43 million based upon

claims for home health services purportedly provided to Medicare beneficiaries

referred by patient recruiters, including MARY SMELTER-BOLTON and CASS

HAWKINS.

## Overt Acts

51.    In furtherance of the conspiracy and to accomplish its objects and

purpose, at least one of the co-conspirators committed and caused to be committed

in the Eastern District of Michigan, and elsewhere, at least one of the following

overt acts, among others:

19

52.     Between in or around November 24, 2017, and in or around June 8,

2020, WALID JAMIL directed DELAINE JACKSON, CAROL IBRAHIM, and

others to pay CASS HAWKINS on multiple occasions in exchange for Medicare

beneficiary information, subsequently used to bill Medicare for home health care

services purportedly provided through Great Lake, Divined, and Trillium,

including on February 22, 2019, in the amount of $3,600.

53.     Between in or around May 16, 2016, and at least April 9, 2019,

WALID JAMIL directed others to pay MARY SMELTER-BOLTON on multiple

occasions in exchange for Medicare beneficiary information, subsequently used to

bill Medicare for home health care services purportedly provided through Reflex

and Community First, including on April 5, 2019, in the amount of $500.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 9-10
### 42 U.S.C. §§ 1320a-7b(b)(2)(A)-(B)
### 18 U.S.C. § 2
### (Payment of Kickbacks in Connection with
### a Federal Health Care Program)
### D-1 WALID JAMIL
### D-3 CAROL IBRAHIM
### D-4 DELAINE JACKSON

54.     Paragraphs 1 through 28 of the General Allegations section,

Paragraphs 32 through 39 of the Manner and Means section of Count 1, and

Paragraphs 48 through 53 of Count 8 of this Indictment are re-alleged and

incorporated by reference as though fully set forth herein.

20

55.     On or about the dates set forth below, in the Eastern District of

Michigan, and elsewhere, defendants WALID JAMIL, CAROL IBRAHIM,

DELAINE JACKSON,  aided and abetted by, and aiding and abetting others

known and unknown to the Grand Jury, did knowingly and willfully offer and pay

remuneration, including kickbacks and bribes, directly and indirectly, overtly and

covertly, in cash and in kind, including by check, as set forth below, to induce

MARY SMELTER-BOLTON, CASS HAWKINS, and others to: (i) refer an

individual to a person for furnishing and arranging for the furnishing of any item

and service for which payment may be made in whole and in part under a Federal

health care program, that is, Medicare; and, (ii) purchase, lease, order, and arrange

for and recommend purchasing, leasing or ordering any good, facility, service, or

item, for which payment may be made in whole or in part under a Federal health

care program, that is Medicare; as set forth below:

| Count | Approximate Date of Payment | Description | Approximate Amount |
|---|---|---|---|
| 9<br>D-1 W. JAMIL<br>D-4 JACKSON | April 5, 2019 | Check to SMELTER-BOLTON from Reflex Bank Account No. 2366 | $500 |
| 10<br>D-1 W. JAMIL<br>D-3 IBRAHIM | February 22, 2019 | Check to HAWKINS from Trillium Bank Account No. 8792 | $3,600 |

Each in violation of Title 42, United States Code, Section 1320a-7b(b)(1)

and (2) and Title 18, United States Code, Section 2.

## COUNTS 11-12
### 42 U.S.C. §§ 1320a-7b(b)(1)(A)-(B)
### 18 U.S.C. § 2
### (Receipt of Kickbacks in Connection with
### a Federal Health Care Program)
### D-6 MARY SMELTER-BOLTON
### D-7 CASS HAWKINS

56.     Paragraphs 1 through 28 of the General Allegations section,

Paragraphs 32 through 39 of the Manner and Means section of Count 1, and

Paragraphs 48 through 53 of Count 8 of this Indictment are re-alleged and

incorporated by reference as though fully set forth herein.

57.     On or about the dates set forth below, in the Eastern District of

Michigan, and elsewhere, defendants MARY SMELTER-BOLTON and CASS

HAWKINS,  aided and abetted by, and aiding and abetting others known and

unknown to the Grand Jury, did knowingly and willfully solicit and receive

remuneration, including kickbacks and bribes, directly and indirectly, overtly and

covertly, in cash and in kind, including by check, as set forth below in return for:

(i) referring an individual to a person for furnishing and arranging for the

furnishing of any item and service for which payment may be made in whole and

in part under a Federal health care program, that is, Medicare; and, (ii) purchasing,

leasing, ordering, and arranging for and recommending purchasing, leasing or

ordering any good, facility, service, or item, for which payment may be made in

22

whole or in part under a Federal health care program, that is Medicare; as set forth below:

| Count | Approximate Date of Receipt of Payment | Description | Approximate Amount |
|---|---|---|---|
| 11 D-6 SMELTER-BOLTON | April 5, 2019 | Check to SMELTER-BOLTON from Reflex Bank Account No. 2366 | $500 |
| 12 D-7 HAWKINS | February 22, 2019 | Check to HAWKINS from Trillium Bank Account No. 8792 | $3,600 |

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 18 U.S.C. § 982(a) (7)

58.     The allegations contained in Counts 1 through 12 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendants WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM, DELAINE JACKSON, IBRAHIM SAMMOUR, MARY SMELTER-BOLTON, and CASS HAWKINS, pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

59.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, upon being convicted of the crimes charged in Counts 1 through 12 of this Indictment, the convicted

defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

60. Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 10 of this Indictment, the convicted defendant(s) shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

61. Money Judgment: Property subject to forfeiture includes, but is not limited to a forfeiture money judgment equal to total amount of forfeitable proceeds as a result of defendants' violations as alleged in Counts 1 through 10 of this Indictment.

62. Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the Court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461, to seek to forfeit any other property of WALID JAMIL, JALAL JAMIL, CAROL IBRAHIM, DELAINE JACKSON, IBRAHIM SAMMOUR, MARY SMELTER-BOLTON, and CASS HAWKINS, up to the value of such property.

THIS IS A TRUE BILL.

DAWN N. ISON
UNITED STATES ATTORNEY

*s/ Grand Jury Foreperson*
Grand Jury Foreperson

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

s/ Shankar Ramamurthy
SHANKAR RAMAMURTHY
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 924-5368
Email: shankar.ramamurthy@usdoj.gov

Dated: January 25, 2023

| United States District Court<br>Eastern District of Michigan | Criminal Case Co | Case: 2:23-cr-20062<br>Judge: Roberts, Victoria A.<br>MJ: Grand, David R.<br>Filed: 02-01-2023 At 03:21 PM<br>INDI SEALED MATTER (SS) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to com

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** |
| ☐ Yes    ☒ No | **AUSA's Initials:** |

**Case Title:** USA v.  Jamil, et al.

**County where offense occurred :**  Oakland and Wayne

**Check One:**    ☒ Felony         ☐ Misdemeanor         ☐ Petty

   ✓ Indictment/_____ Information --- **no prior complaint.**
   _____ Indictment/_____ Information --- **based upon prior complaint [Case number:**     ]
   _____ Indictment/_____ Information --- **based upon LCrR 57.10 (d) [Complete Superseding section below].**

## Superseding Case Information

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

January 25, 2023
Date

s/Shankar Ramamurthy

Shankar Ramamurthy
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 202-924-5368
Fax:    N/A
E-Mail address: Shankar.Ramamurthy@usdoj.gov
Attorney Bar #:  IL 6306790

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.